## PARLER *et al. vs.* JOHNSON.

1. Under a *fi. fa.* against two named persons, described as copartners,
the individual property of either may be seized and sold.
2. The sheriff's entry upon the *fi. fa.* and his deed executed in pursu-
ance thereof, after the lapse of more than twenty years, are better
evidence than the parol testimony of a single witness as to what
property was sold. And the entry is not traversable by third per-
sons upon the trial of an action against them for the premises.
3. After land is bid off and before any deed is executed or money paid,
the bidder may consent that another person take his place as pur-
chaser, pay the money and receive the deed in his own name. The
sheriff's deed to one thus substituted for the bidder is valid.
4. Though the right of a widow to her dower in land seized as the
property of her deceased husband, be not reserved in the levy, it
may be reserved in the sale and in the sheriff's deed, and the con-

veyance will be effective as to the reversion. The sale cannot be of a larger but may be of a less estate than that embraced in the levy.

5. A deed is not void for uncertainty because it describes the premises only by the number of acres lying on the north and east side of a specified lot of land, subject to the dower of a named widow for her life, and at her death to be the sole property of the vendee, his heirs and assigns forever, in fee simple. The description is equivalent to a direct reference to the proceedings by which dower was assigned to the widow, and the plain import of the deed is to convey the reversion in the identical premises embraced in the assignment of dower.

6. Verdict consistent with law and fully supported by evidence.

July 11, 1888.

Levy and sale. Partnership. Evidence. Deeds. Sheriffs. Dower. Estates. Reversion. Verdict. New trial. Before Judge ATKINSON. Appling superior court. March adjourned term, 1887.

Lafayette Johnson brought complaint against Jasper Parler and others to recover lot of land number 610 in the second district of Appling county, with mesne profits. Defendants pleaded the general issue. On the trial, the following evidence for plaintiff was offered:

*Fi. fa.* against Washington Dyal and Solomon Wilks, copartners, based on a judgment rendered July 29, 1854, with an entry of levy by the sheriff on certain lots, including the lot in question, as the property of Washington Dyal, September 13, 1854; an entry of postponement of sale by claim, October 1, 1854; and an entry by W. H. Overstreet, deputy-sheriff, March 5, 1861, of the sale of the reversionary interest in lot 610, for $212, and of the disposition of the money under an order of court at March term, 1861, it not being stated what this reversionary interest or who the purchaser was.

A deed by the sheriff, dated March 5, 1861, to Seaborn Hall, reciting the levy and claim just stated, legal

advertisement for sale of lot 610 under the levy, and sale to Hall, on sale day in November, 1860, in accordance with law, " subject to the widow's dower of Mrs. Mariah Dyal, widow of said Washington Dyal, which has been laid off and assigned to her for life in the said lot of land, her dower being three hundred and twenty-eight acres on the north and east sides of said lot, as appears by the entry of the commissioners and judgment of the court this day assigned her, the said Hall to have no use and control of said dower during the life of the said Mariah Dyal, but to be in her use and possession during her life"; recorded June 7, 1861.

Deeds from Seaborn Hall to Daniel McEachin, from McEachin back to Hall, and from Hall to plaintiff. On the last a point was made, for which see motion for new trial, 5th ground.

Daniel McEachin testified as follows : Washington Dyal was in possession of the lot in dispute when it was sold by the sheriff and at the time the judgment was rendered. The dower of his widow was located on the northeast corner of lot 610, and ran back to the west side of a branch to an agreed line. There was a field on that part of the lot which divided the dower from the balance of the lot. The widow died before the suit was brought. This witness was corroborated by John F. Hall, who swore that Washington Dyal was in possession of the lot before and up to the time of his death, etc.

Berrien Hall testified for defendants that he bought the lot in dispute at the sheriff's sale ; that John F. Hall bid on it, but it was knocked off to witness, who offered the deputy-sheriff, who made the sale, the purchase money, but was told by that officer that he need not pay the money until court ; that he never got a deed, but afterwards consented for it to be made to his

uncle, Seaborn Hall, on payment of the purchase money; and that this uncle was not present at the sale, and witness did not buy as his agent. Elijah Dyal corroborated this witness, and in addition testified that the whole lot was not sold, but only that portion outside of the widow's dower, stating his reason for remembering this fact; also that Washington Dyal was in possession of the lot at and previous to his death.

The jury found for the plaintiff 328 acres of the premises in dispute, as described in the deed of Seaborn Hall to Lafayette Johnson. The defendants moved for a new trial on the following grounds:

(1)–(2) Because the verdict was contrary to law and evidence.

(3) Because the court admitted in evidence the *fi. fa.* against Dyal & Wilks, copartners, the objection being that it was issued against the goods and chattels, lands and tenements of Washington Dyal and Solomon Wilks, copartners, and the property was levied on as the property of Washington Dyal, one of the defendants.

(4) Because the court refused to allow defendants to traverse the entry of the deputy-sheriff as to the sale of the whole of the lot in dispute.

(5) Because the court admitted in evidence the deed from Hall to plaintiff, the objection being that the description therein, "three hundred and twenty-eight acres of lot of land number six hundred and ten, lying in the second district of said county and on the north and east sides of said lot of land, subject to the dower of Mariah E. Dyal for her life, and at her death to be the sole property of the said Lafayette Johnson," was insufficient.

(6) Because the court charged the jury that the entry upon the execution made there by the officer is the highest and best evidence of the facts therein recited,

and the execution with this entry thereon and the deed executed in pursuance thereof are presumed to be legal, and are conclusive upon the rights of the defendants in execution and those claiming under them, until the same are impeached and set aside upon a direct pro⸗ ceeding for that purpose.

The motion was overruled, and defendants excepted.

ROBERTS & SMITH, for plaintiffs in error.

G. J. HOLTON & SON, by brief, *contra.*

BLECKLEY, Chief Justice.

1. The code, §§1899, 3351, expressly provides that where some of the partners sued on a copartnership contract are served with process and others not, and these facts appear by proper returns, the judgment shall bind the copartnership property, and also the individual property of the partners who have been served.  It is said these sections do not apply where all are served. They do not literally, but they take it for granted that where all are served all would be bound, and they establish a like rule where the service is but partial instead of complete—that is, they carry the judgment as it respects individual property as far as the service has gone but no farther.  Can there be any good reason why individual property should be affected where some only are served, and not affected where all are served? It is suggested that a *fi. fa.* against A and B, "copartners," is against the partnership only, and not against the partners, either or both, individually; that if they have property as copartners, it may be seized, but what they have severally, as mere individuals, cannot be seized under a direction to seize the property of A and B, copartners.  Suppose " copartners " omitted, would

not the *fi. fa.* be authority for seizing not only the joint property of A and B, but the separate property of either? There can be no doubt that it would, for it is the universal practice to connect defendants in *fi. fa.* conjunctively and not disjunctively. To reach individual property the writ does not have to say, nor does it ever say, A "or" B, but it always says A "and" B; and so it would do, putting the word *and* before the last defendant, and nothing before any of the others, were there a score of defendants. Then it is not *and* which makes the present problem, but *copartners.* The effect of this word is either to render partnership as well as individual effects subject to seizure, or it is mere description. Construe it either way, and it will leave untouched the validity of the *fi. fa.* as to individual property. There may be some doubt as to whether the *fi. fa.* could move against partnership property, but there is none whatever that it is authority for seizing the individual property of either defendant.

2. One witness testified that the land actually sold by the sheriff was not that embraced in the sheriff's return and in his deed of conveyance; that the reversion in the land covered by the widow's dower was not sold. More than twenty years had elapsed, and surely the recollection of this one witness was not sufficient to match and master official documents like these. The defendants in the action wanted to traverse the return, that is, make up a collateral issue denying its truth. The court declined to allow this, and we suppose correctly, for we never heard of the like. They who proposed the traverse were not parties to the cause in which the return was made.

3. That the bidder, with the consent of the sheriff, did not pay cash down, but held himself ready to pay the money when it was wanted, and after some delay

suffered another person to pay the money and take the sheriff's deed, was no hurt to any one and was not unlawful. If the sheriff chose, at his own risk, to let the bidder retain the money, and the bidder chose to allow another to pay the money and be substituted for himself as purchaser, neither law nor public policy was violated, so far as we can see. We think it is a common practice and a harmless one for those who bid off property at public sales to direct titles to be made to other persons; and if the officer gets the money when he wants it, no matter whose it is or who pays it. The money is no worse for coming from a third person, and the conveyance no worse for being made to such person.

4. The levy was upon the whole fee in the premises, but the sale excepted the widow's right to dower. That she had such right was afterwards established, for before the sheriff made his deed, the dower was assigned and laid off. We see nothing to invalidate the sale in the fact that the levy was upon a larger estate than was sold. The sale could not be good for more than was embraced in the levy; for less it could be, and, we think, was good.

5. The kind of description of the premises which the deed contained is substantially indicated in the fifth head-note. We think it was sufficient to prevent the deed from being void for uncertainty. Generally whether the premises can be identified by the description is a question for the jury. The plain import of this deed is to convey the reversion in the identical land upon which the widow's dower had been located. The boundaries of the dower were the boundaries of the reversion.

6. We perceive no conflict of the verdict with law, and no want of sufficiency in the evidence to support

the finding. The result is, that the court did not err in denying the motion for a new trial.

Judgment affirmed.