MARCH POLK ET UX. v. W. D. KYSER ET AL.

Decided October 25, 1899.

**1. Mortgage—Deed Absolute.**

Where plaintiff was in possession of land under a parol contract of purchase and applied to A. to buy it for him, and A. bought the land, taking an absolute deed thereof to himself, and agreeing with plaintiff that he would make a deed of it to plaintiff when plaintiff paid him for it, this did not constitute the deed to A. a mortgage.

**2. Parol Sale of Land—Requirements to Pass Title.**

Payment of the purchase money, valuable improvements made, and possession, must all concur in order to pass the title to land by parol sale.

**3. Same—Tender of Unpaid Purchase Money.**

One claiming land under a parol contract of purchase is not entitled to a judgment decreeing him the title where he has not tendered into court the purchase money due thereon.

APPEAL from Falls. Tried below before Hon. SAM R. SCOTT.

*Finks & Gordon,* for appellants.

*Martin & Eddins,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—Appellant briefly states the nature and result of this suit correctly, substantially as follows:

"The suit was brought by March Polk and Lucy Polk, husband and wife, against W. D. Kyser and Thomas Franklin, on the 26th day of June, 1896, to establish that a deed executed by Walter Gresham to J. H. Anders, of date November 4, 1891, reciting a consideration of $240, and a deed of J. H. Anders to defendant W. D. Keyser, reciting a consideration of $253.75, conveying 14 8-10 acres of land out of the Chambers and Manchaca conflicting grants situated in Falls County, Texas, were mortgages, and to recover damages from defendants for unlawful ejectment of plaintiffs, on the 13th day of January, 1896, from the premises on the tract.

"Plaintiffs waived actual and exemplary damages for unlawful ejectment. Defendants answered by demurrer and special exceptions and

plea of not guilty, and specially, that about the 18th day of January, 1895, the contract of purchase, if any ever existed between plaintiffs and defendants, was annulled and abandoned.

"The trial was had before the court without a jury, and judgment was rendered for defendants that plaintiffs take nothing. Application for new trial was overruled and plaintiffs appeal."

Plaintiff's petition alleges, in effect, that in 1886 or 1887 he purchased the premises from Walter Gresham, agreeing to pay $12 per acre; that at the time of his purchase the land was unimproved; that he was put in possession by L. W. Goodrich, Gresham's agent; that he grubbed and cleared the land, using the rents and profits to support his family from the beginning of the year 1887 until the —— day of January, 1896, and since the contract he has put all the land in cultivation and placed improvements on it of the value of $300, consisting of a dwelling-house, cotton-house, wire fence inclosing all the land, except a small strip lying on the old Waco road. That some time after his purchase he paid the sum of $30 on the purchase price, it being understood that when he paid Gresham the purchase money he would make plaintiff a deed to the land. That in October or November, 1891, Gresham began to press plaintiff for the remainder of the purchase money, and he, plaintiff, requested J. H. Anders to advance or loan him the remainder of the purchase money due, which Anders agreed to do, it being understood that Anders would pay Gresham the purchase money due, take a deed from Gresham as security therefor, and would convey the premises to plaintiff Polk, when he, Polk, should repay him the purchase money and interest. That Anders paid the purchase money and took an absolute deed therefor from Gresham, the amount paid by Anders, principal and interest, being $240, on the 4th day of November, 1891. That during the month of December, 1891, plaintiff was farming for defendant Kyser, and he sought to make the same arrangement with Kyser he had made with Anders, that Kyser should pay Anders plaintiff's debt and allow plaintiff to pay him, and that Kyser should take a deed from Anders to secure the loan or advance and convey the premises to plaintiff when reimbursed by him, it being the intention of the parties that the legal title to the land should vest in Kyser until he was repaid principal and interest of the sum paid to Anders. That on the 14th of December, 1891, Kyser paid Anders the sum of $253.75, and took a deed from Anders to the land, it being understood at the time that Kyser would hold the legal title to the land as security for the sum paid Anders, and convey to plaintiff when repaid by him the $253.75 with interest. * * * That both of said deeds were absolute in form, but were intended as mortgages to secure the purchase price of the land. That Anders recognized this, and conveyed the land to Kyser at plaintiff's instance and request. That Keyser, at the time of such conveyance or a short time thereafter, added a bonus to the debt of $46.25 and charged plaintiff on his books with an indebtedness of $300, and for the year 1892 col-

lected from plaintiff 10 per cent on this amount. That the bonus was exacted for the same year, 1892, by Kyser, which plaintiff alleges was usurious. That on the 1st day of January, 1893, plaintiff paid Kyser $204.45 on the land and he credited the same on the debt, claiming the same as of January, 1893, amounted to $330, ascertained by charging plaintiff 10 per cent on $300 from December, 1891, to December 14, 1892.

Plaintiff further says, that if anything be found due from him to Kyser on the land he is willing to pay the same; that he does not know and has no means of ascertaining what sum, if any, he is due Kyser, but is willing that he have judgment foreclosing plaintiff's interest in the land for any sum found to be due him on the trial within sixty days from the rising of the court. He prays for judgment canceling the said deed to Kyser and compelling him to convey the premises, or for judgment divesting title out of Kyser and investing it in plaintiff; that Kyser be decreed to hold the legal title to the land in trust for plaintiff, and that he be compelled to reconvey the same upon payment of what may be due him by plaintiff, and that he have writ of possession for the premises against Kyser and Franklin. Other particular adjustments are prayed for that need not be set out.

Defendants answered by demurrers, general and special, general denial, and specially, that about the 1st day of January, 1895, by express agreement between plaintiff and defendant, the contract of purchase of the land by plaintiff was canceled and annulled, and that plaintiff rented the premises from Kyser for the year 1895, and during that year occupied the premises as tenant of Kyser, and paid rents as such tenant, and that the alleged ouster of plaintiffs, if any, was as tenant of Kyser, they having refused to surrender possession at the expiration of the term. That plaintiffs were not in fact holding the land under contract of purchase.

*Findings of Fact.*—Plaintiff Polk, about the time alleged, verbally contracted with Judge L. W. Goodrich, agent of Gresham, for the purchase of the land in controversy, agreeing to pay $12 per acre, of which $30 were paid in 1889, December 18th. Under the verbal contract of purchase, Goodrich, Gresham's agent, put Polk in possession March, 1886. Polk cleared and put in cultivation the land and built his cabin upon it and was living upon it. Polk was unable to pay for the land. He had no written evidence of the contract between him and Gresham. November 4, 1891, Gresham executed to Anders an absolute deed to the land in consideration of $240, the amount then due by Polk, and Anders on December 14, 1891, sold the land to defendant Kyser for $253.75 paid, and executed to him an absolute deed to the premises. The agreement between Anders and Polk was that "Anders would pay Gresham what was due on the land by Polk, and if Polk paid him he would make Polk a deed to it." Anders paid the money due by Polk on the land, all the purchase price, except the $30 which Polk had paid, and in pur-

suance of the agreement Gresham's agent, L. W. Goodrich, made Anders a deed to the land. At the time Polk paid the $30, the interest due amounted to $53.28. The witness Judge Goodrich testified, and the statement is true, that "if Polk paid Anders, Anders would make a deed as Gresham would have done; that Gresham was not under any obligation to make Polk a deed until he paid, and the idea I had was that Anders took Gresham's place." There are some expressions in Judge Goodrich's testimony indicating that Anders loaned the money to Polk to pay for the land, but we have selected such parts of his testimony as support the judgment and authorize it.

Anders was dead at the time of the trial, but he had testified on a former trial, and his testimony was reproduced, as follows: "That he bought a piece of land from Walter Gresham, the land that March (Polk) was living on. I bought the land with the understanding that when March (Polk) paid me the money he was due with interest, then I was to make a deed to said land to March; that he was not pressing March for the money at the time he made deed to Kyser. March never paid him, Anders, anything on the land while he held the deed."

Polk paid Kyser January 5, 1893, $204.45, a part of which was due on other matters, leaving balance due on the land according to the terms offered by Kyser, $184.22, no part of which has ever been paid.

Kyser forcibly ejected Polk from the land on the 13th day of January, 1896, without legal process, after Polk had rented the premises, and Kyser has been in possession ever since. This suit was filed on the 22d of June, 1896, for recovery of the premises. Plaintiff on the trial waived and withdrew claim for damages growing out of the ejectment. Plaintiff and family resided on the premises from the fall of 1886 to January, 1895, as a homestead, and there was no change of possession on the execution and delivery of the deed from Gresham to Anders, or on delivery of the deed from Anders to Kyser. Plaintiffs March Polk and Lucy Polk are husband and wife, and they have no homestead other than the premises in suit.

The facts of Kyser's purchase of the land are as follows: Polk asked Kyser to pay the land off, Anders then holding Gresham's deed to it. Kyser replied that he would see about it. Afterwards he saw Anders. Anders wanted his money and desired to dispose of the land; Kyser proposed to buy it, and the sale was made. Kyser paid him $253.75 for the land, and Anders conveyed it to him by the deed before mentioned. After the deed, Kyser informed Polk that he would let him have the land for $300, and give him three years to pay for it. This was the understanding, and when the three years expired, if Polk had failed to pay for the land he must surrender possession. Polk asked for longer time, another trial, and Kyser rented him the land for the year 1895 for $45. This renting was about the 1st of January, 1895. Polk paid the rent for 1895. Polk agreed to vacate the premises by the 1st of January, 1896, but refused to do so. Kyser gave him written notice to quit, and

after some fourteen days Kyser moved another tenant into possession. Polk then owed on the land about $183, none of which has been paid.

Nothing occurred when Polk came to Kyser and asked him to pay Anders for the land, except, as stated, Kyser replied he would see about it. Kyser afterwards bought the land without saying anything further to Polk about it. Subsequently he agreed to convey to Polk for $300. No notes or writings passed. Polk was occupying the land when Kyser bought from Anders, and Kyser knew this, but he did not know as a fact what the arrangement between Anders and Polk was, except what Anders told him. The substance of the trade between Kyser and Anders was that the latter paid Anders what Polk owed him on the land and Anders made the deed. Plaintiff Polk, after the parol agreement with Gresham, made permanent and valuable improvements on the land.

*Opinion.*—The effect of the testimony is that Anders bought the premises from Gresham, paying him for them and taking an absolute deed to them at the request of Polk, and that he took Gresham's place as vendor of Polk to give him time to pay for the land. The testimony does not show that the deed of Gresham to Anders, being absolute in form, was intended as a mortgage, and the deed should have effect according to its purport, the testimony not being sufficient to establish the mortgage. The court below did not err, therefore, in holding that the mortgage was not established as contended for by Polk.

The court did not err in holding that the deed from Anders to Kyser was not a mortgage, the testimony failing to show the fact. Polk at most and according to his own testimony entered into possession under a parol agreement, and though he has made valuable improvements, without paying the purchase money, he can not demand a deed to the premises or a decree for the land. Payment of the purchase money, the erection of valuable improvements, and possession must all concur to pass title by a parol sale. Bradley v. Ousley, 74 Texas, 71, and authorities cited; Douglas v. Baker, 79 Texas, 506; Neatherly v. Ripley, 21 Texas, 434; Robinson v. Davenport, 40 Texas, 342; Taylor v. Ashley, 15 Texas, 52.

In some cases, when a vendee is sued for the land by the vendor for default in payment of purchase money, he may tender the purchase money in court and demand conveyance. Walker v. Emerson, 20 Texas, 706; Hild v. Linne, 45 Texas, 477.

The vendee can enforce specific performance only, when he is sued for the land, by showing equities and making tender of unpaid purchase money before judgment. Land and Cattle Co. v. Boon, 73 Texas, 555; Ufford v. Wells, 52 Texas, 617, cited.

Where the purchase money notes and the land are transferred by the vendor retaining a lien to secure the payment of the purchase money, the transfer subrogates the purchaser to all the rights of the vendor, and, if the lien be expressly retained, the purchaser of the notes and the land may, under a plea of not guilty, show that the notes have not been

paid, and thus defeat the action for possession. Hamblen v. Folts, 70 Texas, 135, and authorities cited p. 136; Masterson v. Cohen, 46 Texas, 523, et seq.; 69 Texas, 480.

As we have seen, there was no error in the judgment holding that the deeds read in evidence were, according to their purport, absolute conveyances and not mortgages; nor in rendering judgment for defendants for the land and in refusing to allow plaintiff time to make payment, he failing to tender the purchase price into court before judgment. This would be true if plaintiff had taken from Gresham a written agreement to convey. Having no written contract upon which to predicate his rights, he has not shown facts in his favor which would constitute title to the land or right to possession of it; nor could he, in such case and under the circumstances, claim the right to a judgment permitting him to redeem the land. There was no error in the judgment, nor in overruling the motion for a new trial. We have in the foregoing considered every assignment of error, and finding no error, the judgment is affirmed.

*Affirmed.*