MOZOCH et al. v. SUGG.    (No. 446–3828.)*

(Commission of Appeals of Texas, Section A. Oct. 10, 1923.)

1. **Vendor and purchaser** ⊂⇒301 — **Action of vendor in proceeding for purchase money election not to rescind.**

Action of the vendor in proceeding for the purchase money is an election, which will prevent a rescission.

2. **Vendor and purchaser** ⊂⇒191—**Vendee entitled to possession only on offer to comply.**

Where possession is taken by one having a vendor's lien, who elects not to rescind by bringing an action to foreclose, but fails to carry the foreclosure to its completion, the vendee is not entitled to possession without offering to perform the contract by paying the amount owing.

3. **Vendor and purchaser** ⊂⇒215—**Vendee has no greater right than his vendor to possession.**

If a vendee of land was not entitled to possession as against his vendor by reason of vendor's lien for the purchase price, a grantee of such vendee is not entitled to possession, and this is also true as against a grantee of the original vendor.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by J. D. Sugg against I. J. Mozoch and another. Judgment for plaintiff was affirmed by the Court of Civil Appeals (240 S. W. 625), and defendants bring error. Reversed and remanded.

Wilcox & Graves, of Georgetown, Winbourn Pearce, of Temple, and A. L. Curtis, of Belton, for plaintiffs in error.

Spell, Naman & Penland, of Waco, for defendant in error.

GERMAN, J. This appeal is from a judgment of the district court of Williamson county, Tex. The suit was filed by J. D. Sugg against I. J. Mozoch and Anton Mozoch, and was in the nature of a suit of trespass to try title to a block of land in the town

of Granger. The parties will be designated as in the trial court. The following brief history of various transactions prior to the institution of the suit will make clear the issues involved:

On February 16, 1909, J. W. Walker and wife conveyed the block of land in controversy to M. M. Nolen. The consideration for this conveyance was the sum of $14,000, of which $5,000 was paid in cash. As a part of the consideration Nolen executed three notes, for $1,656.94 each, being payable to W. M. Hill, and a vendor's lien, superior to all other liens, was retained in the conveyance and the notes to secure their payment. Nolen also executed to J. W. Walker two notes for $1,397.45 each, secured by a second vendor's lien. The deed recited that Nolen had also executed a deed of trust on the block of land to secure the Granger Oil Mill in the payment of $4,000 advanced to make the cash payment. This deed of trust is dated February 16, 1909.

By various transfers the three notes in favor of W. M. Hill passed to W. P. Young, and on November 30, 1915, he was the owner of these notes and the vendor's lien securing same. The two notes given by Nolen to Walker were transferred to and owned by Mrs. Alma Jarrell on November 30, 1915, together with the lien securing same. By deed dated September 15, 1913, Nolen and wife conveyed the land in controversy to J. T. Sudduth, and Sudduth assumed the payment of all the notes above described.

The record discloses that for the season of 1913-1914 Sudduth operated the gin located on the land in controversy and then abandoned it. While the title to the notes and lien stood in the name of W. P. Young, the testimony shows that the Mid-Tex Oil Mills, successor to Granger Oil Mill, was the real owner. The testimony further shows that, after Sudduth left the property, the Mid-Tex Oil Mills took possession of the same, and held possession until May, 1918, when Young sold the property as hereinafter shown.

November 30, 1915, W. P. Young filed suit in the district court of Williamson county against J. W. Walker, M. M. Nolen, J. T. Sudduth, and Mrs. Alma Jarrell, seeking judgment on his notes and foreclosure of the vendor's lien. None of the parties answered, except Mrs. Jarrell. Judgment was entered in this cause July 2, 1916, by the terms of which Young recovered against J. T. Sudduth judgment for the sum of $8,282.94, with foreclosure of his lien as against all parties. Mrs. Jarrell recovered judgment against Sudduth in the sum of $3,580.92, with foreclosure of her lien. It was ordered that the property be sold as under execution. After sale the proceeds were to be applied, first to the satisfaction of Young's debt, then to the satisfaction of Mrs. Jarrell's debt,

and the balance, if any, to be paid to Sudduth. If the amount received was not sufficient to pay the judgment, either party might have execution against Sudduth. Order of sale under the foregoing judgment was issued March 24, 1917, and the land was advertised for sale. On April 23, 1917, the constable returned the order of sale with the notation: "This sale called off by plaintiff."

By special warranty deed dated April 30, 1917, Mrs. Alma Jarrell conveyed the block of land in controversy to W. P. Young. By warranty deed dated May, 1918, Young conveyed the land to A. W. Storrs, A. L. Curtis, and Winbourn Pearce. The testimony shows that these parties took possession of the property and held possession until they sold to T. W. Cole, July 28, 1919. On June 8, 1920, Cole sold the land, for a consideration of $5,000, to I. J. Mozoch and Anton Mozoch. The inference from the record is that these parties had possession of the property at the time the suit was filed. The title asserted by plaintiff, J. D. Sugg, was under a quitclaim deed from J. T. Sudduth, dated August 5, 1920. Suit was filed by him August 21, 1920.

The defendants answered by general demurrer and general denial, and by special plea, setting up all of the prior transactions, alleging their possession, and that plaintiff had no title on which he could recover. They prayed that the deed to plaintiff be canceled and cloud removed from the title, and in the alternative pleaded that they be subrogated to all of the rights formerly held by Young under the judgment against Sudduth, and plaintiff be required to pay off and discharge the unpaid purchase money, evidenced by the judgment against Sudduth, before being allowed to recover. The answer contained, among other things, the following allegations:

"On or about the ―― day of ――, 1916, an order of sale and execution was duly issued out of the district court of Williamson county, Texas, in due and proper form, to enforce in the usual way said judgment, which said order of sale and execution was not in fact levied or executed for the following reasons, to wit: It being considered by all the parties interested that said property was wholly insufficient in value to pay off and discharge that portion of said judgment which had been rendered in favor of W. P. Young, the said Mrs. Jarrell did make, execute, and deliver to W. P. Young her special warranty deed to said property, which deed was dated on or about April 30, 1917, and which was filed for record May 12, 1917, recorded in volume 180, page 537, Deed Records of Williamson County, Texas, to which reference is here made for more particular description and statements, and by the terms of said deed she did grant and convey unto the said W. P. Young all of the property which is in controversy in this suit, and did by virtue of said deed transfer, assign and convey unto W.

P. Young all of the rights which she had under said judgment heretofore mentioned. That the said John T. Sudduth gave possession of said property to W. P. Young under an agreement that he would make, execute, and deliver a deed to said property. That by oversight and negligence said deed was never in fact executed by John T. Sudduth to W. P. Young, but it was agreed and understood by and between W. P. Young and John T. Sudduth that the said John T. Sudduth would claim no further interest in said property. That the said W. P. Young might enter upon the possession of the same and claim and own the title in fee simple thereto as against any and all rights which the said John T. Sudduth might have theretofore had, and the said W. P. Young did agree that he would accept said property in full satisfaction of said judgment, and the said W. P. Young did immediately thereafter enter into possession of said property and has had the open, peaceable, and notorious possession thereof ever afterwards until he executed a deed thereto to A. W. Storrs, Winbourn Pearce, and A. L. Curtis on or about the —— day of May, 1918."

On a trial before the court without a jury judgment was entered in favor plaintiff, Sugg, against the defendants for the title and possession of the block of land sued for, with all costs of suit. It was further decreed that the judgment herein did not adjudicate the present status or ownership of the judgment entered in the suit of Young against Sudduth and others July 2, 1916, and this judgment is without prejudice to the rights, if any, of the owner of said judgment as such owner. This judgment was affirmed by the Court of Civil Appeals at San Antonio. 240 S. W. 625.

To sustain the judgment herein plaintiff, Sugg, who is defendant in error, relies upon the contentions that by the proceeding instituted November 30, 1915, and the judgment of foreclosure July 2, 1916, W. P. Young, as holder of the superior title to the land under the original vendor, Walker, elected to affirm the contract of sale, and thereby the superior legal title vested in Sudduth, subject to be divested by sale made under the judgment; that, Young having thus elected, he could not disaffirm and rescind the sale by taking possession and selling to another; that he, plaintiff, as holder of the title of Sudduth, had a right to recover title and possession from those holding under Young.

[1, 2] As an abstract proposition it may be admitted that the filing of the suit to foreclose the vendor's lien and the obtaining of the judgment of foreclosure was such an election on the part of Young that he could not thereafter rescind the sale and be vested with superior title to the land, yet this is not decisive of the rights of the parties. This would be of importance, perhaps, if Young or those holding under him were bringing an action seeking to recover title and possession from another rightfully in possession; but this is not the case here, and it is not necessary for us to decide the character of title, if any, held by plaintiffs in error. It is only necessary to determine that their possession is lawful. The thing of controlling importance in the decision of this case is the position occupied by defendant in error, Sugg. As plaintiff in the trial court he held the position of a grantee out of possession, proceeding against those in rightful possession, obtained from the holder of the superior title; a large part of the original purchase money being unpaid, and he having no equities whatever, so far as disclosed by the record. Whatever title he may have, whether legal or otherwise, he is not permitted to assert it against one in possession obtained from a holder of the superior title, except on the condition that he comply with the terms of the contract under which his title originated.

This is based, not only upon the soundest principles of equity and good morals, but is established by numerous decisions of our courts. The case of McPherson v. Johnson, 69 Tex. 484, 6 S. W. 798, we think is decisive of this very question. In that case Joseph Baldridge had sold certain lands to McPherson, who gave his note for the purchase money. Default having been made, suit was instituted against McPherson for foreclosure of the vendor's lien. McPherson disappeared, and, under the supposition that he was dead, administration was taken out on his estate. The administrator became a party to the suit, and judgment was rendered foreclosing the vendor's lien. This judgment was certified to the county court, and the administrator sold the land to J. R. Baldridge. Later McPherson appeared and brought suit to recover the land. It appears to have been conceded that the administration proceedings were ineffectual to pass title, and, when McPherson sued Johnson, Baldridge, and others, the situation was exactly as it is in this case: There was a judgment foreclosing the vendor's lien as against McPherson; Johnson and others were apparently in possession, and the purchase money was unpaid. The following excerpt from the opinion by Judge Gaines clearly establishes the principles upon which the present case should be decided:

"Under the rule of decision in this court, the contract pleaded was executory. The plaintiff made no offer in his pleadings to pay the purchase money. On the contrary, he set up the statute of limitations to the intervenor's prayer for judgment on his note. The vendee in an executory contract, who has not paid the purchase money, must, at least, offer to pay in order to enforce the agreement. The vendor's right of action on his debt may be barred, and his privilege of election thereby lost; but the vendee is not relieved of his obligation to pay the debt, if he would hold the land. The debt remains, though the right of action be barred

(Fievel v. Zuber, 67 Tex. 275); and without an offer to pay it, the vendee, if in possession, cannot defeat the suit of the vendor for the recovery of the land; nor, if out of possession, can he recover against the vendor or any one holding under him. We think these principles well settled in this court, and that they need no further discussion. Harris v. Catlin, 53 Tex. 8; Jackson v. Palmer, 52 Tex. 434; Baker v. Ramey, 27 Tex. 53; Dunlap v. Wright, 11 Tex. 604; Burgess v. Millican, 50 Tex. 397. It is unnecessary for us to consider what would have been appellant's right had he made an offer to pay.

"It is insisted, however, that plaintiff's vendor, having elected to bring suit upon the note, thereby affirmed the contract, and lost his right to claim the land. But we take this to be the rule: If, after such default as justifies the vendor in rescinding the sale, he proceeds for the price, he loses his right of rescission: Provided, the vendee avail himself of his privilege to pay the debt. But the contract still remains executory, and the latter cannot, by pleading limitation, defeat the action for the debt, and still claim the land under a contract with which he has refused to comply. The case of Harris v. Catlin, supra, is full authority for the proposition that an unsuccessful attempt to enforce payment of the purchase money will not defeat the vendor's recovery of the land, after a subsequent refusal by the vendee to pay. In that case, as in this, no part of the purchase money was paid, and in that respect is distinguishable from Coddington v. Wells, 59 Tex. 49. The distinction is drawn in the opinion in the later case.

"It is further claimed that, after the conveyance of a portion of the land to Johnson, intervener was no longer in a position to demand a payment of the purchase money or to maintain a suit therefor. But if the plaintiff had the right to recover the land, as against Johnson and his codefendants, as he claims in his suit, it was not necessary that intervener should make any further title, and the conveyance to Johnson did not stand in his way. The argument comes back to this: That, in order to recover the land, he must have offered to pay the consideration. His plea of limitation was a distinct refusal to do this, and therefore the court did not err in holding in effect that he could not claim under a contract of sale with conditions of which he had refused to comply."

It will be observed, from the language used in the foregoing opinion, that when it is said that a vendor loses his right of rescission it is clearly meant that he loses that right, provided the vendee take advantage of his action and pays the purchase money; in other words, the action of the vendor in proceeding for the purchase money may be construed to be an election, which will prevent a rescission only when the vendee takes advantage of that election and offers to pay the consideration due. Of course, in such a case, the vendee being willing to do the very thing which the vendor by his action has declared he wanted done, the vendor will not be permitted to change his mind and

attempt to hold the land, instead of accepting the money tendered him by the vendee.

The same principle is illustrated in the cases brought by the vendor or those holding under him against the vendee or those holding under him. In all such cases, when it has been held that the vendor has lost his right to rescind, he has not been permitted to recover the land without first giving the vendee an opportunity to pay the purchase money, or, in cases where equity required it, without offering to return the amount already paid. His right to recover the land was defeated by the vendee paying the consideration. In every such case, where the vendee refused to pay the balance due, and the vendor did equity, the vendor was permitted to recover the land. In every case where the vendee defeated the right of the vendor to the land, it was by offering to do equity and pay the purchase money.

Thus it will be seen that by his election the vendor is bound to accept the money, if the vendee be willing to pay, and he cannot disaffirm and seek to hold the land against the claim of the vendee. But if he has possession of the land, and is satisfied with it, certainly the vendee cannot deprive him of it under a contract which he has refused to perform himself. If any additional title is conferred on the vendee by the action of the vendor in obtaining judgment and a decree of foreclosure, it is still incumbered with the obligation on his part to do equity and pay the purchase money before he can assert that title in an effort to recover possession of the land from the vendor or some one lawfully holding under him.

The situation here is this: Sudduth admitted that after the ginning season of 1913–1914 he left Granger, and never went back to have anything to do with the property. The following testimony of N. K. Smith, president of the Mid-Tex Oil Mills, is undisputed:

"We had possession of this property from the time Mr. Sudduth left there, and still had it as long as the Mid-Tex Mills were in existence. He turned it back to us, and we were on the premises and looked after it and cared for it as our property. Mr. Sudduth was not in possession of this property both before the judgment was rendered and afterwards. The Mills and Mr. Young have been in possession of it ever since. Mr. Young, after it was foreclosed under our original deed of trust, had it in his hands as trustee; in fact, he looked after it as manager of the mill there previous to that time. He and I together, just generally looking after it, paid the insurance and taxes, and such matters as that, because we considered it ours."

[3] The record does not show when the deed of trust was foreclosed, nor who became the purchaser under the foreclosure; but the inference is that it was the Mid-Tex Oil Mills, which was the real owner of the

purchase-money notes and vendor's lien. While the lien of this deed of trust was inferior to the vendor's lien, yet the title of Sudduth was subject to it; he having assumed the payment of the note to secure which the lien was given. Acting for the Mid-Tex Oil Mills as purchaser under this deed of trust, Young not only had a right to possession of the property, but could defeat the claim of Sudduth or any one holding under him until the amount for which that lien was created was paid. But as the record does not fully reflect this transaction, we do not base our decision on that proposition. Sudduth having abandoned the property, the holder of the superior vendor's lien notes had a right to take possession and protect the property from loss, damage, or depreciation. This was done long before the foreclosure suit was filed.

As the testimony is conflicting, we will assume that the court found against the contention that Sudduth agreed to deed the property to Young or the Mid-Tex Oil Mills. Whatever the reason for calling off the sale under the judgment, whether by agreement with Sudduth as alleged, or whether under the belief that he could deal with the property as his own without a sale and there was no necessity for a sale, the possession by Young was lawful, and he appears to have been satisfied to hold the land in satisfaction of his debt. If the property was worth less than the debt, Sudduth could not complain. If it was worth more than the debt, by tendering the amount due Sudduth could require a surrender of the property. Sugg acquired no greater right than Sudduth had. The possession of Young being lawful, that acquired by his vendees was lawful. Therefore, aside from any title acquired under the foreclosure of the deed of trust, we think the position of Mozoch at the time of the institution of the suit, to say the least, was that of a mortgagee in possession. Without an offer to pay what was due Sugg could not recover the land. The recent case of Browne v. King, 111 Tex. 336, 235 S. W. 522, is decisive of this proposition.

Counsel for defendant in error and the Court of Civil Appeals cite the case of Gardener v. Griffith, 93 Tex. 355, 55 S. W. 314, to sustain the judgment herein. At first sight it seems to support their contention. However, we think there are several things to distinguish that case from this one. There the court was deciding a single proposition, submitted upon a certificate by the Court of Civil Appeals, which manifestly did not include all the facts involved in the case. Furthermore, it appeared that a part of the land on which the lien was foreclosed had been sold under the foreclosure. The court was passing upon the one proposition as to whether or not the vendor thereby lost the right to rescind as to the part unsold. The court held that, if the vendor rescind, he must rescind as a whole, and, after causing a sale of a part of a tract under the foreclosure, he cannot claim a rescission as to the remainder. It was further held that, the grantor having lost the right to rescind, the legal title vested in the grantee. However the court did not undertake to decide the right of the grantee to assert that title against the grantor in possession without offering to pay the balance of the purchase money. We do not think it was intended to hold by that decision that he could recover the land under such circumstances without offering to pay the purchase money, because Judge Gaines quotes with approval from the case of McPherson v. Johnson, as follows:

"But we take this to be the rule: If, after such default as justifies the vendor in rescinding the sale, he proceeds for the price, he loses his right of rescission: Provided, the vendee avail himself of his privilege to pay the debt."

The case of Thompson v. Robinson, decided just a short time prior to the opinion in the case of Gardener v. Griffith, reported in 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843, supports the principle we have stated. There the land had been sold by the city of San Antonio to Schleicher, a vendor's lien being retained. It passed from Schleicher to Robinson. Later the city foreclosed the lien as against Schleicher, but neither Robinson's estate nor his heirs (he being dead) were parties to the suit. Sale was made under the foreclosure to Mrs. Bohnet. The court held that the judgment of foreclosure did not affect the interest of the Robinson heirs, but they had the right to pay Mrs. Bohnet the purchase money paid by her and thereby perfect their title. Then it is further held:

"It is true that, by the suit against Schleicher, the city of San Antonio waived the right to rescind the contract of sale for any antecedent failure of Robinson or his heirs to make payment; but it did not relieve them from the obligation thereafter to perform the contract within a reasonable time."

It may be the defendant in error could show satisfaction of the judgment in whole or in part, and may have equities not disclosed by the record; but he should be required to make proof of these things in this action. The trial court, we think, erred in not adjusting all equities, and requiring defendant in error to pay or offer to pay any unpaid part of the purchase money, before being entitled to recover possession of the property.

We therefore recommend that the judgment of the Court of Civil Appeals and the district court be reversed, and the cause remanded.

CURETON, C. J. The judgment recommended in the report of the Commission of

Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.