### FRIEDSAM v. ROSE.  (No. 167.)*

(Court of Civil Appeals of Texas. Waco. March 12, 1925. Rehearing Denied April 16, 1925.)

**1. Bankruptcy ⬡400(1)—Bankruptcy courts have exclusive jurisdiction to determine claims of bankrupts to exemptions.**

Under Bankruptcy Act, § 2 (U. S. Comp. St. § 9586), courts of bankruptcy have jurisdiction to determine all claims of bankrupts to their exemptions, and such jurisdiction is exclusive.

**2. Bankruptcy ⬡400(1)—Judgment of bankruptcy court exempting certain property of bankrupt as homestead not subject to collateral attack.**

A decree of bankruptcy court setting aside certain property to bankrupt as exempt as his homestead could not be collaterally attacked in a subsequent action of trespass to try title

between bankrupt and purchaser at trustee's sale of property not set aside as exempt.

**3. Bankruptcy ⬡400(1)—Judgment of bankruptcy court setting aside certain property to bankrupt as sole exemption pursuant to agreement of bankrupt held binding.**

Where judgment of bankruptcy court setting aside certain property to bankrupt as his sole exemption was rendered on written agreement of bankrupt, who had right to designate his exemptions, and bankrupt did not claim that he was deceived or that there was any error or mistake in agreement or judgment, such judgment was binding on bankrupt.

**4. Bankruptcy ⬡264 — Plaintiff purchasing through another at sale by trustee in bankruptcy and paying purchase price and receiving deed held to have acquired title, notwithstanding erroneous report of trustee.**

Where, at sale by trustee in bankruptcy, J. bid property in for plaintiff and notified trustee that he bid it in for plaintiff and plaintiff paid amount of bid and deed was made to him, fact that trustee in reporting sale for confirmation erroneously gave name of J. as purchaser was immaterial and in no way affected validity of sale.

**5. Frauds, statute of ⬡74(1)—Trusts ⬡35 (1)—Alleged agreement between bankrupt and purchaser at trustee's sale held not to create a trust, and, being oral, was within statute of frauds.**

Where alleged oral agreement between bankrupt and purchaser at trustee's sale, whereby purchaser agreed to buy land and convey it to bankrupt, who had no interest in land and did not furnish any part of purchase money, was at most only an option to purchase such land from purchaser for what it cost him and was without consideration, no trust could arise out of such transaction, and agreement, being oral, was void under the statute of frauds.

**6. Trusts ⬡35(1)—Promise to purchase land and convey it to another, who furnishes no part of purchase price, creates no trust.**

A promise to buy land and convey it to another, who has no interest in land and who does not furnish any part of purchase money, does not create a trust.

**7. Bankruptcy ⬡269—Defendant held not entitled to recovery of property under alleged option to repurchase without tender of purchase price.**

Where defendant bankrupt sought recovery of property purchased by plaintiff at trustee's sale, under an alleged oral option, whereby plaintiff gave defendant option to repurchase such property within five years, even though such agreement had been in writing and founded on adequate consideration, defendant could not recover property unless he pleaded and proved a tender to plaintiff of required amount within five years and was tendering said amount on trial of action.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Action by J. K. Rose against I. W. Friedsam. Judgment for plaintiff, and defendant appeals. Affirmed.

Alva Bryan and W. L. Eason, both of Waco, for appellant.

Sleeper, Boynton & Kendall and S. E. Stratton, all of Waco, for appellee.

STANFORD, J. This was an action of trespass to try title, brought by appellee, J. K. Rose, against appellant, to recover a lot fronting about 80 feet on Barnard avenue and running back with North Eighteenth street 165 feet to alley, and will be referred to herein as the North Eighteenth street property. The facts will be stated in connection with the assignments discussed.

Under several assignments, appellant contends, in effect, that the property was his homestead, that the bankruptcy court had no authority to order it sold as a part of his estate in bankruptcy, and so the sale of said property by the trustee of his estate, in accordance with the order of the bankruptcy court, to the appellee, conveyed no title. The record discloses that appellant had been engaged in the retail grocery and meat business and pickle manufacturing business since about 1908 on South Eleventh street, where he owned lots 8, 9, and 10, being houses Nos. 500, 504, and 508; lots 9 and 10 with buildings thereon valued at $7,500, and lot No. 10 with a brick building on same valued at $13,500. Appellant also owned a lot fronting 80 feet on Barnard street and running back 165 feet on North Eighteenth street. On the rear end of said lot had been cut off a business lot, 25x50 feet, and a brick business building constructed on same, fronting Eighteenth street. Appellant used the property on South Eleventh street for both his family residence and place of business for many years, and up to about a month prior to the time he filed his voluntary petition in bankruptcy, when he moved upon the property on North Eighteenth street, and began his residence on the front end of the North Eighteenth street lot and opened a grocery store and meat market on the rear end of said lot in said brick building, and also still maintaining his grocery, meat, and pickle business on the three lots on South Eleventh street. In his petition to be adjudged a bankrupt he claimed all of the Eleventh street property as his business homestead, and also all of the North Eighteenth street property, including the brick business house on same, as his residence homestead. The trustee of his estate recommended to the bankruptcy court that the North Eighteenth street property be set aside to him as both his residence and business homestead. Appellant, the bankrupt, filed a contest, protesting against the recommendation of the trustee. This controversy was settled by a written agreement, signed by the trustee in person and also by his attorneys, and by the attorney for the bankrupt, providing, in effect, that the South Eleventh street property should be set apart to the appellant, the bankrupt, in full settlement of all his claim of exemptions, and that he would surrender to the trustee all of the property claimed by him on North Eighteenth street. On the hearing of said contest, said compromise agreement was submitted to the bankruptcy court and by him approved, and by an order of said court the lots 8, 9, and 10, and all improvements on same, on South Eleventh street, were set apart to the bankrupt as his residence and business homestead, and in the same order the court directed the trustee to sell the North Eighteenth street property, which the trustee did, in accordance with law, and said property was bought in by appellee. Said sale was duly reported and approved by the court and deed made by the trustee, conveying said property to appellee.

[1] The Bankruptcy Act expressly confers upon courts of bankruptcy jurisdiction to determine all claims of bankrupts to their exemptions. Section 2 of the Bankruptcy Act (U. S. Comp. St. § 9586), creating courts of bankruptcy and defining their jurisdiction provides that such courts "are hereby invested, within their respective territorial limits, * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * to * * * (11) determine all claims of bankrupts to their exemptions." 1 Fed. Stat. Ann. (2d Ed.) 516, 533; In re Elkin (D. C.) 218 F. 971; Nez Perce Bank v. Pindel, 193 F. 917, 113 C. C. A. 545; In re Highfield (D. C.) 163 F. 924; In re W. C. Allen & Co. (D. C.) 134 F. 620; In re Lucius (D. C.) 124 F. 455; C. J. vol. 7, § 629. Not only so, but the jurisdiction of such courts in bankruptcy matters is exclusive. McGahan v. Anderson, 113 F. 115, 51 C. C. A. 92; 7 Am. Bankr. Rep. 641; C. J. vol. 7, § 629. The bankrupt is obligated to schedule all his property in his petition in bankruptcy—that which he claims as exempt as well as that to which he makes no claim—and it is the duty of the bankruptcy court to determine and set apart to him the exemptions allowed by law. Clearly, the property is subject to the jurisdiction of the court. If the bankruptcy court did not have jurisdiction of all the property of the bankrupt and the power to determine the bankrupt's exemptions, the administration of the bankruptcy law would be impossible. We think the facts in this case demonstrate the wisdom of the bankrupt law in requiring the bankrupt to schedule all of his property, both what he claims exempt and nonexempt, and in providing that said court shall determine the bankrupt's exemptions and set same apart to him. As stated above, appellant owned three lots on South Eleventh

street, a house on each lot, one being a brick building, all valued by him in his voluntary petition to be adjudicated a bankrupt at $21,000; also, a residence and business lot, with a brick building on it then used by him as a place of business, on North Eighteenth street, of the value of $6,000 or $7,000. He had used the Eleventh street property for his residence, as well as his business homestead, up. to about a month before he filed his petition, when he moved onto the North Eighteenth street property. In his petition in bankruptcy he claimed all of it, valued at some $26,000, as exempt. When the trustee, representing the creditors, recommended to the bankruptcy court that the residence and business lot, with the brick building on it, on North Eighteenth street, be set apart to the bankrupt as his exemptions and that the South Eleventh street property be held not exempt and that it be administered for the benefit of creditors, the bankrupt filed a contest, contending all of it, except the business lot and brick building on North Eighteenth street, should be held to be exempt. If the bankruptcy court did not have jurisdiction to determine this contest because it involved a question of exemptions, then what court could determine it? No state court could determine it, and unless such question could be determined there could be no administration of the bankrupt law.

[2] The bankruptcy court had jurisdiction and the exclusive right to determine such issue, and its judgment or decree adjudging and setting apart to the bankrupt his exemptions was a judgment of a court of competent jurisdiction, and appearing to be regular upon the face of the record, no court has a right to question its validity collaterally, as attempted here. If the bankrupt, appellant herein, was aggrieved by the judgment or order of the bankruptcy court, his remedy was by appeal, not to a state court, but to a higher federal court, or, in some circumstances, he might bring a suit in the proper federal court—a direct proceeding—to set aside said judgment, but certainly such suit could not be maintained in a state court. No state court has a right to review or question, either collaterally or directly, the judgment of the bankruptcy court involved herein. 1 Fed. Stat. Ann. (2d Ed.) 516, 533; Smalley v. Laugenour, 30 Wash. 307, 70 P. 786; Smalley v. Laugenour, 196 U. S. 93, 25 S. Ct. 216, 49 L. Ed. 400; Seedig v. First Nat. Bank (Tex. Civ. App.) 168 S. W. 445; Martin v. Robinson, 67 Tex. 368, 3 S. W. 550.

[3] The judgment of the bankruptcy court, setting aside the Eleventh street property to appellant as his sole exemption, was rendered upon the written request and agreement of appellant, signed by his counsel, and he does not claim that he was misled or deceived, or that there was any error or mistake in said agreement or the judgment rendered

thereon, and never made any complaint of said judgment until long after the Eighteenth street property was sold and purchased by appellee. He had the right, under the bankrupt law, to thus designate his exemptions, and having done so, and a valid judgment rendered, giving him what he requested, he is bound by same. We overrule all of appellant's assignments raising the contention that the bankruptcy court had no authority to order the Eighteenth street property sold and that such sale conveyed no title, etc.

[4] Under several assignments, appellant contends, in effect, that the trial court should have instructed a verdict for him, because the evidence showed that if any one acquired any title by reason of the trustee's sale, such one was W. E. Johnson, and not appellee. The record shows, as testified by both appellee and W. E. Johnson, that W. E. Johnson, as a representative of appellee, attended the sale and bid the property in for appellee, and notified the trustee at the time he bid it in that he had done so for appellee and for him to make the deed to appellee. The trustee reported the sale as having been made to W. E. Johnson, and it was approved and deed directed to be made to the purchaser. Appellee paid the amount of the bid and deed was made to him. There was no objection to the evidence showing that W. E. Johnson was acting only for appellee in bidding in the property, that he so informed the trustee at the time he bid it in, and that appellee paid the amount of the bid. In the case of Dodd v. Templeman, 76 Tex. 57, 13 S. W. 187, our Supreme Court, by Chief Justice Stayton, said:

"The purpose of a decree of confirmation is not so much to determine what particular person is entitled to complete title to the thing bought, as to determine that the sale was made in such manner and for such price as justifies the court's sanction to the completion of the purchase. If the sale had in fact been made to J. C. Kendrick, and under his direction the deed made to W. C. Kendrick, the transaction would have been valid, even if the decree of confirmation had expressly recognized J. C. Kendrick as the purchaser. * * * Evidence to show the mistake in the name of purchaser in report of sales was properly received, but had there been no evidence on that question, it was not for appellant, on that account, to question the right of W. C. Kendrick to the deed."

In the case of Voorhees v. Bank, 10 Pet. 479, 9 L. Ed. 490, the Supreme Court of the United States, in discussing this question, said:

"This is a matter entirely between such person [the purchaser named] and those to whom the deed was made; to Cutter [the person whose property was sold], it is immaterial, to whom the conveyance was made; his right was extinguished by the sale and confirmation. It is equally immaterial to those who claim under Cutter, who received the deed;

Stanley, the purchaser, or Foster, the plaintiff; it was a matter between themselves, which can have no effect on the validity of the sale, were it unexplained."

The evidence in this case conclusively showed that appellee, through his agent, W. E. Johnson, bought the North Eighteenth street property at the trustee's sale; that said sale was duly approved by the bankruptcy court; that appellee paid the amount of the bid and received the trustee's deed, conveying to him the property. We think the fact that the report of the sale erroneously gave the name of W. E. Johnson as the purchaser was immaterial, and in no way affected the validity of the sale. Dodd v. Templeman, 76 Tex. 57, 13 S. W. 187; Davis v. Touchstone, 45 Tex. 490; Ewing v. Higby, 7 Ohio, 198, pt. 1, 28 Am. Dec. 633; Voorhees v. Bank, 10 Pet. 479, 9 L. Ed. 490; Parler v. Johnson, 81 Ga. 254, 7 S. E. 317; Blanchard v. Baker, 8 Greenl. (Me.) 253, 23 Am. Dec. 505; Cyc. vol. 24, p. 49; Gibbs v. Davies, 168 Ill. 205, 48 N. E. 120; Williams v. Harrington, 33 N. C. 616, 53 Am. Dec. 421. We overrule all of appellant's assignments raising the above question.

[5] By other assignments, appellant contends that under the findings of the jury and uncontradicted evidence, it was the duty of the trial court to render judgment for appellant, and that the court erred in not so doing. The special issues submitted to the jury having any relation to the North Eighteenth street property, and the answers of the jury to such issues, are as follows:

"Special Issue No. 1. At the time the North Eighteenth street property was purchased at trustee's sale, was there an agreement between Rose and Friedsam that Rose would buy such property for the use and benefit of Friedsam, and that Rose would convey to Friedsam said property upon the payment by Friedsam of the amount expended by Rose in the purchase of same and other outlays thereon and five per cent. interest?" To which the jury answered: "Yes."

"Special Issue No. 2. At the time of the purchase of said North Eighteenth street property at the trustee's sale was J. K. Rose acting as an individual or as a representative of the Provident National Bank?" To which the jury answered: "Individual."

"Special Issue No. 3. The testimony shows that J. K. Rose has expended the sum of $7,256.45 in the purchase of the North Eighteenth street property and for outlays thereon. Now, you are asked: Did the said Rose pay said sum of money out of his own funds or out of the money belonging to the bank?" To which the jury answered: "Own money."

"Special Issue No. 6. What amount of rent has been collected by J. K. Rose off of the North Eighteenth street property since the trustee's sale thereof?" Answer: "$1,260."

Appellant testified:

"I had an agreement with Mr. Rose relating to the purchase of this North Eighteenth street property. It was made just a short time before the property was sold. I went to him and asked him to buy it in, and he agreed to do it and carry it for me until I was ready to redeem it, that is, for what he had paid on it. He told me he would buy it in and hold it for me and let me; that is, give us the privilege of buying it back and paying him back what he had paid on it, at any time."

A written agreement, providing that the rents on the brick building situated on a part of the North Eighteenth street property should be collected by the Provident National Bank and kept by said bank as a special deposit to await the determination of this case, and by said bank paid to the successful litigant, unless otherwise disposed of by agreement, was read in evidence.

If the above findings of the jury authorized a judgment for appellant for the property in controversy, then such judgment should have been rendered, and if they did not so warrant, then the trial court rendered the proper judgment. As we interpret the findings, in answer to the first special issue the jury found there was an agreement between Rose and Friedsam that Rose would buy said property for the use and benefit of Friedsam, and that Rose would convey to Friedsam said property upon the payment by Friedsam of the amount expended by Rose on said property and 5 per cent. interest. In answer to the second special issue, the jury found that in the purchase of said property Rose was not representing the Provident National Bank, but was acting as an individual. In answer to the third special issue, the jury found that Rose expended $7,256.45 on said property, and paid same out of his own funds. In answer to the sixth special issue, the jury found there had been collected by Rose $1,260 rent, this being the rent collected on the brick building on the North Eighteenth street property and deposited in the Provident National Bank under the provisions of the agreement above referred to. It will be observed from the answer to the first special issue that the agreement, found to exist by the jury between appellant and appellee, does not require or obligate appellant to repay appellee the amount he paid for said property and take a deed to same. Said agreement does not obligate appellant to do anything. It does obligate appellee to deed the property to appellant upon the payment by appellant to appellee of the amount he expended in said purchase, but leaves the matter optional with appellant to make such payment and take the deed, or not, as he might elect. The findings to the other issues do not refute, but rather strengthen, the view that the only effect of such agreement was to give appellant an option to purchase said property from appellee for what it cost him. There is no indication in any of said findings that the parties understood or intended that

appellee was loaning the purchase price of this property to appellant. The Provident National Bank was engaged in loaning money, and had loaned appellant money when he was engaged in the mercantile business, but there is no evidence that appellee, as an individual, had ever loaned appellant, or any one else, any money, or that he had any money to loan. The transaction had none of the earmarks of a loan from appellee to appellant. There is no evidence that appellant ever gave appellee a note or due-bill for the $7,256.45, or that appellee ever charged this, or any other amount, to him. In fact, there is no evidence from any source—not even a circumstance—that anybody ever contended that appellant ever owed appellee anything. Does the evidence throw any light on the findings of the jury as to what the real agreement was between the parties?

Appellant testified:

"He (Rose) agreed to buy this property and carry it for me until I was ready to redeem it; that is, for what he had paid on it."

And further:

"He told me he would buy it and hold it for me and let me—that is, give us the privilege of buying it back and paying him back what he had paid on it, at any time."

From the findings of the jury, and from the uncontroverted evidence of the appellant himself, it is clear the agreement appellant had with appellee was only an option to purchase from appellee for what it cost him, and there was no consideration even for such option. If we are correct in this, then no kind of a trust, either resultant, implied, or express, could arise out of said transaction, or was created by said agreement, and the agreement on the part of appellee, if made, as appellant contends, was void under the statute of frauds, which was duly pleaded by appellee, and was also void for want of consideration. The rule of law applicable to the facts of this case is correctly stated in Burns v. Veritas Oil Co. (Tex. Civ. App.) 230 S. W. 445, where, in discussing trusts, it is said:

"It is essential that the party setting up the trust shall have paid or become bound for the purchase money on his own account and as a part of the original transaction. 1 Perry on Trusts, pars. 133, 134; * * * Wade v. Cohen, 173 S. W. 1168."

See, also, Robbins v. Kimball, 55 Ark. 414, 18. S. W. 457, 29 Am. St. Rep. 45; Parramore v. Hampton, 55 Fla. 672, 45 So. 902; Rische v. Diesselhorst (Tex. Civ. App.) 26 S. W. 762; 39 Cyc. pp. 107 and 108. This same rule of law is also correctly stated in Watkins v. Watkins (Tex. Civ. App.) 141 S. W. 1048, as follows:

"To create a trust, either express or resulting in favor of a party, he must at the time, or before the purchase, furnish or agree to pay the purchase money, or his proportional part thereof. Allen v. Allen, 101 Tex. 362, 107 S. W. 528; * * * Williams v. San Saba County, 59 Tex. 444."

[6] A promise to buy land and convey it to another, who has no interest in the land and who does not furnish any part of the purchase money, does not create a trust. Thorp v. Gordon (Tex. Civ. App.) 43 S. W. 324. There is no consideration for such promise if the promise is not placed in any worse condition by reason of the same. Foster v. Ross, 33 Tex. Civ. App. 615, 77 S. W. 991. We think the agreement between the parties, under which appellee purchased the property in controversy, failed to create any trust in favor of appellant, and if appellee made the oral agreement, as testified to by appellant, the same, being oral, was void under our statute of frauds. Schutz v. Harris (Tex. Civ. App.) 149 S. W. 242; Wade v. Cohen (Tex. Civ. App.) 173 S. W. 1168; Jackson v. Maxwell, 113 Me. 366, 94 A. 116, Ann. Cas. 1917C, p. 966 (note, p. 976); Bennett v. Harrison, 115 Minn. 342, 132 N. W. 309, 37 L. R. A. (N. S.) 521; 26 R. C. L., Trusts, § 32; 27 C. J. 224 (note 45); 13 C. J. 323, § 162; 28 A. & E. Ency. of Law, 871. We overrule appellant's assignments raising the questions here complained of.

[7] Under other assignments, appellant contends, in effect, that under his agreement with appellee in reference to the purchase of the North Eighteenth street property, it was not necessary for him to tender the amount expended by appellee in the purchase of said property in order for him to recover the same. If the agreement between the parties had been, as contended by appellant, that appellee was to purchase said property at the trustee's sale and give appellant the privilege, within five years, of repurchasing it from him for the amount he had been out on it, and if this agreement had been in writing, and had been founded upon a sufficient consideration, still appellant could not recover the property unless he pleaded and proved a tender to appellee of said amount within five years, and was tendering said amount on the trial of said cause. Miller v. Yturria, 69 Tex. 549, 7 S. W. 206; Rotan Grocery Co. v. Turner, 46 Tex. Civ. App. 534, 102 S. W. 932; Stringfellow v. Braselton, 54 Tex. Civ. App. 1, 117 S. W. 204; Slowey v. McMurray, 27 Mo. 113, 72 Am. Dec. 251; Beck v. Blue, 42 Ala. 32, 94 Am. Dec. 630. In this case, appellee bought the property at trustee's sale in bankruptcy July 23, 1918, paid off mortgages on it amounting to something like $4,000, also taxes and other expenditures, amounting in the aggregate to $7,256.45. The case was tried more than five years after appellee's purchase, and appellant, without pleading or proving a tender to appellee of any part of his said expenditures, sought in his cross-bill to recover said

property, clear of all incumbrance, and basing his supposed right on an alleged oral option, wholly void under the statute of frauds, also void because there was no consideration for the same. Appellant showed no right in any view of the case to recover said property. Hoffman v. Buchanan, 57 Tex. Civ. App. 368, 123 S. W. 170; Mozoch v. Sugg (Tex. Com. App.) 254 S. W. 770; Stephens v. Reik (Tex. Civ. App.) 247 S. W. 627; Polk v. Kyser, 21 Tex. Civ. App. 676, 53 S. W. 87; 39 Cyc. 1899.

Appellant also contends that he was entitled to recover the items of $1,260, $2,500, and $3,520, or that these items should have been credited by the trial court on the $7,256.-45 expended by appellee in the purchase of the property in controversy. The item of $1,260 was rent collected on the brick building situated on the North Eighteenth street property, and under a written agreement introduced in evidence, was to be awarded to whoever recovered the North Eighteenth street property, and the recovery of said property by appellee settled his right to recover said item. The two items of $2,500 and $3,520 the jury found to be the value of a stock of groceries and fixtures situated in buildings on South Eleventh street. The record discloses that appellant owed the Provident National Bank considerably more than the totals of these two items, and so appellant would not have been entitled to recover these items against the bank, if it had been a party to this suit. But it is clear from the record that if appellant was entitled to recover said items against anybody, his right to such recovery was against the Provident National Bank, and not against appellee, and said bank was not a party to this suit.

We have carefully considered all of appellant's assignments, and finding no reversible error, we overrule all of same and hereby affirm the judgment of the trial court.