JAMES P. ELLIS ET AL. v. GREEN B. STONE ET AL.

No. 115.

</div>

1. **Guardianship Under Probate Acts of 1848.**—Under Act of May 20, 1848, a guardian could contract for the location of a land certificate, and to give a locative interest, without the order of the Probate Court, or the approval of such court.

2. **Same—Case Adhered to.**—Wren v. Harris, 78 Texas, 349, adhered to, that a guardian could contract to give a locative interest for the location of a land certificate belonging to the ward.

3. **Hearsay.**—Contest over validity of a sale by a guardian. The court records, including guardianship proceedings, if they existed, were destroyed. The purchaser or holder of locative interest was offered, to prove that "the alleged guardian had represented to him that she was guardian, and that she stated that she had made application to have her contract with the land locator confirmed," etc. *Held*, the testimony was incompetent, as hearsay. But testimony to declarations of the children whose interest was affected by the sale, that their mother was guardian; had made the contract; that it had been approved by the court; were competent as admissions in disparagement of their title, against them and privies not innocent purchasers.

4. **Long Acquiescence.**—Long acquiescence in a partition by the mother as guardian, by which a locative interest was set apart to the locator, is competent as a circumstance against her children for whom she acted; the probate records having been destroyed and secondary evidence being necessary to prove the contents of such records as affecting the land in controversy.

5. Illegal Contract—Surveyor.—A surveyor could legally contract to locate a land certificate without the limits of his district, and to take a locative interest in the land for his services in selecting, locating, and obtaining patent.

APPEAL from McLennan.   Tried below before Hon. J. R. DICKINSON.

*Harris & Saunders* and *E. H. Graham*, for appellants.—1.  The court erred in said second paragraph of its charge [see opinion], in requiring that any of the " acts and doings" of said Williams in locating the certificate under the contract should be reported to and confirmed by said court, before a verdict could be given in favor of plaintiffs under the evidence.

A confirmation, even of a sale of land, need not be shown, if the purchaser shows himself entitled to a confirmation.  Neill v. Cody, 26 Texas, 290; Simmons v. Blanchard, 46 Texas, 271; Robertson v. Johnson, 57 Texas, 65; Moody v. Butler, 63 Texas, 212.

But a contract to locate a certificate is not a contract to sell land.  Gibbons v. Bell, 45 Texas, 418.

And no other contracts by guardians were then required to be confirmed.   Pasch. Dig., art. 3909; Rainey v. Chambers, 56 Texas, 20; 2 Willson's C. C., secs. 588, 589.

2.   The court erred in excluding the testimony of John L. Stone and J. K. Williams, because it proved and tended to prove that the original contract of 1850 and the partition made in 1855, setting apart 1000 acres to said Williams, was confirmed by the Probate Court of Sabine County. Andrews v. Smithwick, 20 Texas, 111; Wells v. Fairbanks, 5 Texas, 582; Tuttle v. Turner, 28 Texas, 759; Hancock v. Lumber Co., 65 Texas, 225; 1 Greenl. Ev., 171, 174.

*E. A. McKenney*, for appellees.—1.  It was necessary for appellants, under their claim of title to the land, to show to the satisfaction of the jury that the Probate Court of Sabine County had jurisdiction of the estate of appellees at that date; and that the court did, by proper proceedings, authorize Jane to make the contract set up in appellants' petition, and that her acts and doings under the authority of the court were properly executed and confirmed by the said court; all this being essential to investiture of title in Williams to the land in controversy. Stone v. Ellis, 69 Texas, 327.

As to residence:   Munson v. Newson, 9 Texas, 109.

Petition for a sale:   O. & W. Dig., arts. 971, 995, 996; Finch v. Edmondson, 9 Texas, 503; Todd v. Caldwell, 10 Texas, 237; Teal v. Terrell, 48 Texas, 494.

As to order of sale:   O. & W. Dig., arts. 767, 778; Jones v. Taylor, 7 Texas, 243.

As to partition:  O. & W. Dig., art. 797 et seq.; Littlefield v. Tinsley, 26 Texas, 355.

2.  The statute of 1848, under which the alleged acts and contracts of Jane Hill with Williams were done and made, does not contemplate or authorize any such contract as is alleged in appellants' petition, and the Probate Court had no authority to warrant the making such a contract by a guardian of the estate of minors, or confirm it when made.  The jurisdiction and powers of Probate Courts under that statute are limited and defined by the statute, and such courts have no authority outside the statute.  In such cases as shown by the allegations of appellants' petition, the statute contemplates that the guardian would employ some party to make the location, and pay him therefor in regular course of guardianship. O. & W. Dig., arts. 970, 971, 974–976; McGary v. Lamb, 3 Texas, 342.

3.  Such a contract as alleged in appellants' petition could only have been authorized or confirmed by a Probate Court upon the petition of an administrator, and that while the administration of the estate was pending; and the only positive and convincing evidence introduced by appellants on the trial of this cause with regard to any locative contract or other attempt at title—the bond and deed of Jane Hill—was by virtue of an alleged administration.  O. & W. Dig., art. 748.

4.  If an unlocated certificate to Jesse Russell was discovered after the close of the administration, in 1849, of the estate of Jesse Russell, shown in the record, it would have been as easy, lawful, and expeditious for Jane Hill to have been appointed administratrix de bonis non by the Probate Court of either Panola or Sabine County, as was the alleged proceeding in Sabine County.

5.  If it be true that the alleged partition between J. K. Williams and the heirs of Jesse Russell was made and consummated as testified to by Williams, and confirmed by the Probate Court of Sabine County as testified to by Williams in his admitted and excluded testimony, still that confirmation would not vest title in him, or constitute a valid partition; because the Probate Court had no authority to order a partition in the manner and form as stated by Williams, and therefore could not confirm it after it was made; and the heirs were not notified or present at said partition nor confirmation, and the alleged guardian was not their representative for that proceeding.  O. & W. Dig., arts. 807, 797 et. seq.; Littlefield v. Tinsley, 26 Texas, 354; Teal v. Terrell, 48 Texas, 509.

6.  Under appellees' plea of res adjudicata, and the testimony introduced thereunder, it fairly appears that all the vital questions involved in this case, and those supported by the plainest and strongest testimony of appellants, were fully considered and adjudicated by this court in Stone v. Ellis, 69 Texas, 327.

7.  If it be conceded that appellants have shown that Jane Hill was appointed guardian of the estate of the heirs of Jesse Russell by the Pro-

bate Court of Sabine County, that she had an order of said court to make a locative contract, and did make the one with Williams as alleged, and that it was confirmed by said court, and that said partition was had as related by Williams, and that that partition was confirmed by the court as alleged, still appellants have not shown title in Williams; because—

(1) They failed to show any evidence of title emanating from Jane Hill in her capacity as guardian, or that she ever, by any distinctive act emanating from her as guardian, recognized Williams' claim to the 1000 acres. Her acquiescence and the statements that she was guardian are not direct and distinct acts as guardian of the estate of the heirs of Jesse Russell. After all these things, and at the last moment, Jane Hill may have had good reason to refuse to make title.

(2) The claim for specific performance of the Williams locative interest, if the claim of title should be shifted to that ground, comes too late, as the acts of Jane Hill as guardian specifically relied on were first set up in 1884, thirty-four years after the alleged contract.

(3) The appellants not only do not show evidence of title from Jane Hill as guardian, but do show evidence of title from her in direct contradiction of the claim of guardianship. Her bond and deed as administratrix and executrix, and which evidence of title appellants repudiate as to her capacity, but do not explain why they received them as evidence of title from Williams, nor why Jane Hill chose to act in those capacities, still have themselves been acting and claiming title under them for about thirty years. O. & W. Dig., arts. 976, 767; Finch v. Edmondson, 9 Texas, 509; Jones v. Taylor, 7 Texas, 243.

*Alexander & Campbell,* also for appellees.—1. It may be admitted that Jane Hill was in 1850 the guardian of the Jesse Russell children, appointed by the Probate Court of Sabine County, and that in 1850 she made a contract with J. K. Williams, the county surveyor of Panola County, to locate said Jesse Russell land certificate, agreeing to give him one-half of the land as his compensation for locating and procuring the patent therefor; and that said Williams in all things performed said contract, located said certificate, and procured said patent; and yet it appears from the uncontroverted evidence in the case that at the time said contract was made and land located that Williams was the county surveyor of Panola County, and prohibited by the Act of March 20, 1848, from making a contract for locating land certificates for other compensation than that allowed by law; and said pretended contract was for said reason absolutely void, and prohibited by the statute law of the State, under heavy penalty and liability to be removed from office for violating the provisions of said statute. Said charge complained of was given in the interest of plaintiffs, and which they were not entitled to have submitted to the jury under the evidence in the case; and though perhaps not tech-

nically correct, plaintiffs are in no position to complain of said charge, for any verdict that might have been rendered in plaintiffs' favor on the charges given or on the charges asked and refused should have been set aside by the court, and judgment rendered for the defendants, for plaintiffs showed, by uncontroverted testimony, that said pretended contract is absolutely void. Hart. Dig., arts. 1357, 1359, 1376, 1790; Wills v. Abbey, 27 Texas, 203; Cotella v. Laxson, 60 Texas, 444; The State v. Thompson, 64 Texas, 690; Bates v. Thomson, 61 Texas, 335; McGregor v. Donnelly, 67 Cal., 149; Turnbull v. Farnsworth, 1 Wash., 444; McIntosh v. Renton, 2 Wash., 121; Claflin v. Torintila, 56 Mo., 363; Buckholder v. Bicton, 65 Pa. St., 496; Stonley v. Nelson, 28 Ala., 514; Woods v. Armstrong, 54 Ala., 150; Ins. Co. v. Brainard, 72 Iowa, 130; 9 Am. and Eng. Encycl. of Law, 909, 914.

2. The fact that said land certificate was not by said Williams located in Panola County, and the fact that these matters were not specially pleaded by the defendants in avoidance of plaintiffs' said title in the lower court, is no answer to the fundamental defect in plaintiffs' title appearing upon the face of the record; because said Williams could not make the contract, illegal in itself, and delegate his authority to some other district or county surveyor to do the work so as to validate a contract already illegal; and because the courts will not lend their aid to the enforcement of disputes growing out of illegal contracts, and contracts made and depending for their existence upon the breach of the statute law of the State; and said Williams would not be allowed to do indirectly, by employing another surveyor, the work that he could not do directly. The court will notice the illegality of contracts ex officio, and allow it to be suggested at any stage of the case and without any plea, and the allowance is not made for the special benefit of the party raising it, but is grounded on general principles of public policy. Read v. Smith, 60 Texas, 379; Schmidt v. Barker, 87 Am. Dec., 527; Bowman v. Gonegal, 92 Am. Dec., 537; Bank v. Owens, 2 Pet., 527; 2 Kent Com., 520–523; Grant v. Wallis, 60 Texas, 350; Hunt v. Robinson, 1 Texas, 748; Shelton v. Marshall, 16 Texas, 344; 1 Pome. Eq., sec. 402.

KEY, ASSOCIATE JUSTICE.—This is the second appeal in this case. A judgment in favor of the present appellants was reversed on the former appeal. 62 Texas, 325. The suit was brought by appellants against the heirs of Jesse Russell, to remove cloud from title to 1000 acres of land, part of the Jesse Russell league survey.

Appellants' petition alleges, in substance, that in 1850 Jane Hill, formerly Russell, and widow of Jesse Russell and guardian of their children, made a contract with one Williams to hunt up the Jesse Russell headright league certificate, which was lost, and locate and have the same patented,

agreeing to give him one-half of the land for his services, he paying all
the expenses, and that the contract was reasonable and fair; that said
Williams performed his part of the contract; that afterwards said widow
and Williams divided the land, setting apart the southwest half for the
widow's community interest and the northeastern half for the children's
one-half, and setting apart the 1000 acres in controversy off of the north
end of the children's one-half to said Williams for his locative interest in
their one-half; and the south end, comprising 1302 acres, to the children
for their part. That said original contract of 1850 was authorized by an
order of the Probate Court of Sabine County, where the guardianship was
pending, and it and said partitions were reported to and confirmed by
said court; that the probate records of said county, with said orders and
reports, were burned in 1875; that plaintiffs own said Williams' title to
said 1000 acres, and are in possession of it; that said widow sold her
community one-half to said Williams in 1854; that said children have
sold off their said 1302 acres; that for a long time said children were
satisfied and acquiesced in said contracts and partitions, but finally began
to claim the said 1000 acres, and clouded the title; that plaintiffs pray for
the removal of the cloud, that their title be confirmed, and for general
relief.

The defendants answered by general demurrer, several special demur-
rers, general and special denials, laches, and stale demand, and prayed
that they be quieted in their title, that the cloud of plaintiffs' pretended
title be removed, and for general relief.

L. G. Merrell was allowed, on the eve of the trial, over plaintiffs' ob-
jection, to make himself a party defendant as the vendee of some of the
defendants pending suit.

The case was submitted to a jury, and verdict went for the defendants,
and judgment was entered up by the court in their favor for the title and
possession of the property, and awarding them a writ of possession for
the same. A motion for a new trial was overruled, and plaintiffs ap-
pealed.

The second paragraph of the court's charge to the jury reads as follows:

"If from the evidence the jury believe that Mrs. Russell, the wife of
Jesse Russell, afterward the wife of H. H. Hill, was appointed by the
Probate Court of Sabine County guardian of the property of the children
of herself and said Jesse Russell, and that she qualified as such, giving
the bond and taking the oath prescribed by law; and you further believe,
that in pursuance of an order of said court, the said Jane Russell, as guar-
dian, made a contract with one J. K. Williams for the hunting up, locating,
and procuring patent on the certificate described in the pleadings and in
evidence as the Jesse Russell headright, and that she agreed, under the au-
thority of said court, to give to Williams one-half of the land that should be
obtained under said certificate, and that said Williams did, in pursuance of

said contract, cause patent to issue on said certificate to said Russell sur-
vey, and that the 'acts and doings' of said Mrs. Russell (or Hill) in
making said contract, and the 'acts and doings' of said Williams in pro-
curing said land to be patented thereunder, were reported to and con-
firmed by said Probate Court of Sabine County, then in that case Will-
iams would become the owner of one-half of said land, including one-half
of the interest of the children of said Jesse."

This charge is complained of as casting a greater burden on appellants
than was imposed by law; and authority directly in point sustains this
contention. Wren v. Harris, 78 Texas, 349.

In the case cited, it was contended, that in the absence of authority
from the Probate Court having jurisdiction of the guardianship, a guar-
dian could make no valid contract disposing of part of a land certificate
belonging to his ward. The Supreme Court denied this contention, and
held, that under the Act of May 20, 1848, relating to guardianships, a
guardian could make a binding contract for the location of a land certifi-
cate belonging to his ward's estate, in which it was stipulated that the
locator should have part of the land in consideration of his services.

The charge in question is obnoxious to the doctrine announced in that
case, and, in effect, required the jury, before finding for appellants, to
find that the contract made by Mrs. Hill, as guardian of the Russell chil-
dren, with J. K. Williams, was authorized and approved by the Probate
Court. This contract was made in 1850, and Wren v. Harris, supra, is
directly in point.

The court did not err in excluding the testimony of John L. Stone and
J. K. Williams as to Mrs. Jane Hill's statements about having been ap-
pointed guardian of her children, etc. This evidence does not come within
any of the exceptions to the rule which excludes hearsay testimony.

The court erred, however, in excluding the evidence of the witness
Stone, to the effect that he had heard all the four children of Jesse Rus-
sell say that Jane Hill was their legal guardian, appointed by the proper
court of Sabine County, and had authority to do what she did, and that
said court ratified the partition made by Mrs. Hill and Williams, and au-
thorized her to deed the land in controversy to Williams. Mrs. Hardin
and Mrs. Martin, two of the children of Jesse Russell, are defendants in
this suit, and the other defendants, excepting L. G. Merrell, are heirs at
law of the other two children of Jesse Russell. L. G. Merrell claims un-
der Mrs. Hardin, now Mrs. Stone. It was shown that the records of Sa-
bine County were destroyed by fire, and if the evidence referred to was
not admissible as proof of circumstances—declarations of interested par-
ties against their interests—tending to show that Mrs. Hill had been ap-
pointed guardian by the Probate Court of Sabine County, and that in
making the contract for the location of the certificate, and in making the
partition of the land asserted by appellants, she acted under authority of

said court, still they were competent evidence to be considered by the
jury on the issues just named, because they were in the nature of admissions made by some of the parties to the litigation, and by persons under
whom other parties to the suit hold.

Declarations or admissions in disparagement of title are admissible
against the person making same, and against his heirs. They are also admissible against his grantee, not shown to be an innocent purchaser for
value, if made prior to the grantee's purchase. Snow v. Starr, 75 Texas,
411; Hancock v. Lumber Co., 65 Texas, 225; 1 Greenl. on Ev., sec. 189;
5 Am. and Eng. Encycl. of Law, 367; Pickering v. Reynold, 119 Mass.,
111; Hayden v. Stone, 121 Mass., 413; Anderson v. Kent, 14 Kans., 207.

This court has not overlooked the fact, that in this State title to real
property can not be conveyed or divested by oral declarations or admissions, except in cases where such declarations or admissions operate as an
estoppel. But the admission of the testimony referred to does not convey or divest title. Appellants having shown that the probate records
of Sabine County had been destroyed, had a right to prove by parol evidence that said records contained the orders which the witness Stone said
the children of Jesse Russell admitted to him they did contain; and having the right to prove such facts by parol testimony, it was equally permissible to prove that prior to the acquisition of title by appellees from
the heirs of Jesse Russell, said heirs admitted such facts. This is so because such appellees are privies—all (except Merrell) holding as heirs of
the Jesse Russell children—and are not innocent purchasers, and the admissions were made against the interests of the persons making them.
And as against Mrs. Martin and Mrs. Hardin, it was, of course, permissible to prove their admissions.

We do not hold that such testimony would be conclusive proof of the
fact it tended to prove. We merely rule that it was competent evidence. It may have proved much or little, as the jury would have determined from a consideration of all the evidence bearing on the question.

And, for the purpose of proving the existence of the alleged probate
orders, it was competent for the jury to consider, if such was the fact,
the long acquiescence of the Russell children in the disposition made by
their mother of the land involved, and their failure to assert any claim
thereto. Such facts were circumstances admissible in evidence, to be
weighed, with all the other testimony, by the jury. There was such testimony before the jury, but the court's charge may have prevented them
from considering it on the issue above stated.

Appellees having introduced evidence tending to show that the heirs
of Jesse Russell had laid no claim to the land in suit, the judgment of
the District Court of McLennan County in the case of G. B. Stone and

others v. J. K. Williams was admissible as a circumstance in rebuttal, tending to show that they had claimed the land.

In the other rulings made by the trial court, on questions likely to arise again, we do not think error was committed.

Although the question does not appear to have been raised in the court below, it is contended by counsel for appellees, that the contract between Mrs. Hill and J. K. Williams for the location of the Jesse Russell certificate was unlawful and void; and that the courts should not sustain his title for this reason; and that whatever errors may have been committed by the trial court, the judgment should be affirmed.

This contention is based upon the fact that Williams, at the time he entered into the contract by which he was to locate the certificate for half of the land, was an official surveyor. He did not locate the certificate in the county of which he was the surveyor; but sent it to a friend of his, who was a surveyor, and procured its location in another county.

If Williams had contracted to locate the certificate within his county, or if, in fact, he had located it in said county, the doctrine announced in Wills v. Abbey, 27 Texas, 203, and other cases cited by appellees' counsel, to the effect that the courts will not aid an officer to enforce a contract whereby he is to receive greater compensation for official services than is allowed by law, might be applicable.

But such was not the case. We do not think the contract in question was forbidden by law or contrary to public policy. The fact that Williams was an official surveyor for a given territory ought not to preclude him from making a contract and locating a land certificate in a county or district of which he was not the official surveyor, although his compensation under the contract was greater than the fees allowed by law to official surveyors. Holding, as we do, that the contract was not unlawful, it is unnecessary to decide what effect is to be given to the fact that it had been executed.

The case of Wills v. Abbey, supra, has been approved and followed by this court in Keith v. Fountain, 3 Texas Civil Appeals, 391. Those cases are distinguishable from the one at bar.

For the errors indicated, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*

Delivered September 27, 1893.

Motion for rehearing refused.